James RALSTON, Plaintiff–Appellant,

v.

Sergeant McGOVERN, Defendant–Appellee.

No. 97–2438.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 1998.

Decided Feb. 8, 1999.

James Ralston (submitted), Green Bay Correctional Institution, Green Bay, WI, Pro se.

James E. Doyle, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendant–Appellee.

Before POSNER, Chief Judge, and COFFEY and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

The plaintiff in this prisoner's civil rights suit appeals from the grant of summary judgment for the defendant, a state prison guard who the plaintiff claims inflicted cruel and unusual punishment on him by denying him medical care. Ralston suffers from Hodgkin's Disease for which he has been treated with radiation that causes painful blisters to form in his throat and causes pain in his mouth as well. The prison doctor has prescribed a pain medication for him. Upon returning to his cell block from one of his radiation treatments, Ralston asked the defendant, Sergeant McGovern, for his pain medication. According to an affidavit by Ralston, McGovern refused even though Ralston explained to McGovern that he couldn't swallow and was spitting blood. McGovern denies that he refused Ralston the medication he requested, but the prison's medication log supports Ralston's version. The district judge, although satisfied that Ralston had presented sufficient evidence to show that McGovern had acted with deliberate indifference to Ralston's medical needs, granted summary judgment for McGovern on the ground that Ralston's mouth and throat pain was not a serious enough medical problem to make the refusal to alleviate it cruel and unusual punishment.

■ The judge was right that not every refusal of medical treatment constitutes cruel and unusual punishment. Medical "need" runs the gamut from a need for an immediate intervention to save the patient's life to the desire for medical treatment of trivial discomforts and cosmetic imperfections that most people ignore. At the top of the range a deliberate refusal to treat is an obvious

violation of the Eighth Amendment, *Estate of Rosenberg v. Crandell,* 56 F.3d 35 (8th Cir.1995); *Westlake v. Lucas,* 537 F.2d 857, 859–60 (6th Cir.1976), and at the bottom of the range a deliberate refusal to treat is obviously not a violation. *Snipes v. DeTella,* 95 F.3d 586, 591–92 (7th Cir.1996); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980); *Doty v. County of Lassen,* 37 F.3d 540, 546 (9th Cir.1994). See generally *Cooper v. Casey,* 97 F.3d 914, 917 (7th Cir.1996). Where to draw the line between the end points is a question of judgment that does not lend itself to mechanical resolution. It is a matter of determining the civilized minimum of public concern for the health of prisoners, which depends on the particular circumstances of the individual prisoner.

■ Beyond this it is difficult to generalize, except to observe that the civilized minimum is a function both of objective need and of cost. The lower the cost, the less need has to be shown, but the need must still be shown to be substantial. It seems to us that to refuse to treat, at trivial cost, the pain caused by cancer and cancer treatments borders on the barbarous. Realism requires recognition that the terror which cancer inspires magnifies the pain and discomfort of the frequent side effects of cancer treatments. It is not as if Ralston were demanding esoteric, experimental, or expensive interventions. Such a demand would raise very serious questions, especially since the side effects of which he complains were not life-threatening *Maggert v. Hanks,* 131 F.3d 670, 671–72 (7th Cir.1997). Ralston was not seeking an expensive or unconventional treatment; he just wanted the pain medicine that the prison doctor had prescribed for him. The prison guard's deliberate refusal of it was a gratuitous cruelty, and not a trivial one, even if the context of cancer is ignored. A blistering that prevents a person from swallowing and causes him to spit blood is a source of discomfort acute enough to constitute a serious medical need, at least when it can be readily and inexpensively alleviated. See *Estate of Rosenberg v. Crandell, supra,* a case like this, where the untreated prisoner was a cancer patient who could not swallow food and was vomiting.

■ We do not think that the defendant is sheltered from liability by the doctrine of qualified immunity for public officers. The purpose of the doctrine is to shield public officers from liability consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it. See, e.g., *Procunier v. Navarette,* 434 U.S. 555, 561–65, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Not only the general standard of liability under the Eighth Amendment for refusal to render medical treatment, *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), but also the application of the standard to pain medication, are both unchanged since the events giving rise to this suit and reasonably clear and definite as applied to a case as extreme as this. See *Murphy v. Walker,* 51 F.3d 714, 720 (7th Cir.1995) (per curiam); *Boretti v. Wiscomb,* 930 F.2d 1150, 1154–55 (6th Cir.1991); *Aldridge v. Montgomery,* 753 F.2d 970, 972–73 (11th Cir.1985). This may seem a paradoxical conclusion in light of the district judge's grant of summary judgment for the defendant; but even judges from time to time misapply settled law.

A fuller development of the facts may cast them in a different light. But on this record, judgment for the defendant was premature.

REVERSED AND REMANDED.