NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted April 8, 2014[*]
Decided June 19, 2014

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-3342

| | |
|---|---|
| LERVOLTIS LUCKETT, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 09-C-1031 |
| RICHARD HEIDORN, et al., | |
| *Defendants-Appellees.* | Patricia J. Gorence, |
| | *Magistrate Judge.* |

## O R D E R

Lervoltis Luckett, a Wisconsin inmate, twice has been diagnosed with a bacterial stomach infection caused by H. pylori. *See Helicobacter Pylori and Pepric Ulcer Disease, Center for Disease Control & Prevention,* http://www.cdc.gov/ulcer/keytocure.htm (last visited Mar. 28, 2014); STEDMAN'S MEDICAL DICTIONARY 790, 858–59 (28th ed. 2006). H. pylori typically causes chronic stomach irritation, but each year about one percent of

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

those infected develop a peptic ulcer. STEDMAN'S, *supra* at 859. The bacteria may lurk in the stomach indefinitely unless treated with antibiotics, and long-term infection can lead to gastric cancer. *Helicobacter Pylori, supra*; STEDMAN'S, *supra* at 859. Luckett, who is confined at Green Bay Correctional Institution, first contracted H. pylori at a different prison in 2007. This action under 42 U.S.C. § 1983 concerns Luckett's second bout with H. pylori at Green Bay. Luckett claims that Richard Heidorn, a prison physician, violated the Eighth Amendment by refusing adequate treatment after he again tested positive for H. pylori in early 2010.[1]

Dr. Heidorn first moved for summary judgment in March 2011, arguing that Luckett had failed to exhaust his administrative remedies, *see* 42 U.S.C. § 1997e(a), and that even if he had properly exhausted, the doctor was not deliberately indifferent to Luckett's medical condition. A magistrate judge, presiding by consent, granted the motion on the ground of exhaustion and dismissed the lawsuit. Luckett then moved for reconsideration and attached copies of grievances complaining about a lack of treatment for H. pylori. Dr. Heidorn conceded the mistake, and the judge reinstated the case.

By then Luckett's suit had been pending for more than two years, and he had asked the magistrate judge to recruit counsel five times. The first three of those requests were made with only the complaint and answer in the record. Luckett filed two more requests after Dr. Heidorn had moved for summary judgment. All of Luckett's requests for counsel assert that he is incapable of litigating pro se because he is mentally disabled and cannot adequately research or litigate a complex medical claim without professional assistance. Luckett also advised the court that he had been receiving legal assistance from another inmate. The magistrate judge acknowledged Luckett's disability but still reasoned that counsel was unnecessary because the lawsuit was not overly difficult and his filings so far had been appropriately supported.

---

[1] Luckett also accused three prison nurses of hindering his access to medical care and delaying for six months the discovery of his H. pylori. On appeal, though, Luckett makes no discernable argument about these defendants, who are mentioned only briefly in his submissions to this court. We conclude that Luckett has abandoned his § 1983 suit against the nurses, *see United States v. Green,* 648 F.3d 569, 577 (7th Cir. 2011); *United States v. Clinton,* 591 F.3d 968, 971 (7th Cir. 2010), and will not discuss any other details regarding them.

Dr. Heidorn again moved for summary judgment in June 2012, this time arguing that Luckett's medical records, his requests for treatment, and the physician's own affidavit show that Luckett's stomach infection was not a serious medical condition and, even if it was, that condition was not ignored. The doctor's evidence, none of which is disputed, shows that in February 2010 a nurse examined Luckett after he complained of experiencing stomach and throat pain and spitting up blood. The nurse noted that Luckett's throat was clear with no visible or tactile lumps, swelling, or other abnormality. She consulted Dr. Heidorn, who ordered blood work and a urinalysis. The testing confirmed an H. pylori infection, and when Dr. Heidorn next saw Luckett on March 2, 2010, he prescribed two antibiotics and omeprazole (a proton pump inhibitor commonly used in combination with antibiotics to treat H. pylori, *see Omeprazole, MedlinePlus, U.S. Nat'l Libr. of Med.*, http://www.nlm.nih.gov/medlineplus/druginfo/ meds/a693050.html (last visited Mar. 28, 2014); *Helicobacter Pylori, supra*). The doctor also suggested a bland diet, but Luckett declined. He wanted to see a "specialist," but Dr. Heidorn explained that Luckett could be treated at the prison. A few days later Luckett complained that his stomach burned when he ate greasy food and requested a modified diet. A nurse reminded him that he already had refused the bland diet. He complained again, adding that his throat hurt and bled when he ate, and agreed to the bland diet. Luckett saw Dr. Heidorn for a follow-up appointment on April 1, 2010, and still complained about stomach and throat pain. Dr. Heidorn examined him but did not see evidence of a throat injury and did not order further testing. The doctor renewed the omeprazole prescription and assured Luckett that he would monitor his progress. The two met again in August 2010, and Luckett reported to the doctor that the medication had eased his symptoms.

Before Luckett's deadline for responding to the motion for summary judgment, he notified the magistrate judge that prison staff had confiscated his legal materials from a "jailhouse lawyer" who had been helping him with the lawsuit. Luckett requested more time to respond, which the court granted. Before his time was up, Luckett wrote the court again, accusing prison staff of destroying his legal materials and requesting an evidentiary hearing. Defense counsel investigated the matter, located Luckett's materials, and assured the court that those materials would be returned to Luckett. When they were not, the judge ordered defense counsel to "facilitate" their "prompt return" and further extended Luckett's deadline to respond.

After prison staff had returned Luckett's legal materials, he filed a sixth motion requesting that counsel be recruited to assist him. Luckett explained that the jailhouse lawyer who had been assisting him was transferred to another facility, and he could not

respond to Dr. Heidorn's motion without help. The magistrate judge denied this motion with the explanation that recruiting a lawyer would not be reasonably likely to alter the outcome of the litigation because Luckett's claim of deliberate indifference was not unusually difficult or complex and, thus far, the plaintiff had "vigorously and competently advocated on his own behalf." The court, though, did give Luckett additional time to respond to the motion for summary judgment.

When Luckett did respond, in June 2013, he mostly confirmed Dr. Heidorn's account. In an affidavit Luckett agreed that a nurse had examined him in February 2010 and told him that she would consult Dr. Heidorn about his medical complaints. Blood and urine samples were collected the following week, and then on March 2, Dr. Heidorn explained that Luckett had tested positive for H. pylori. When Luckett requested more testing and access to a specialist, Dr. Heidorn replied, Luckett says, that the prison would not approve either request because "everything was being cut back" because of a financial crisis. Instead, the doctor told Luckett, he would be reevaluated after completing the course of prescribed medication. And though Luckett admits that he told Dr. Heidorn during the August 2010 follow-up that the medicine was relieving his symptoms, he also speculated that he suffered from some other, undiagnosed condition that Dr. Heidorn had refused to investigate because of the cost. On the basis of that speculation, Luckett argued that Dr. Heidorn had been deliberately indifferent to a serious medical need.

The magistrate judge granted summary judgment for Dr. Heidorn. The court concluded that the evidence would allow a jury to find that Luckett suffered from the effects of an H. pylori infection but not that Dr. Heidorn had been deliberately indifferent to that illness. The court reasoned that the evidence relating to the period after February 2010 showed that Dr. Heidorn's chosen method of treatment, as well as his refusal to refer Luckett to a specialist, were reasonable decisions grounded in professional judgment. Luckett's dissatisfaction with those choices, the court added, did not show deliberate indifference.

On appeal Luckett principally contends that a finder of fact could conclude that Dr. Heidorn, as evidenced by the care he provided after the diagnosis of H. pylori in 2010, was deliberately indifferent to his complaints of throat and stomach pain. Luckett repeats his speculation that he suffers from an undiagnosed condition, as well as his accusation that Dr. Heidorn refused to order additional testing or send him to a specialist only to save money. Luckett adds that Dr. Heidorn, as a general practitioner,

lacks the qualifications to treat him. A competent physician, he says, would have ordered an elimination diet to determine if certain foods were causing him to be ill.

For Luckett to prevail on appeal, he must point to evidence supporting the conclusion that Dr. Heidorn knew about but was deliberately indifferent to a serious medical need. *See McGee v. Adams,* 721 F.3d 474, 480 (7th Cir. 2013); *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012). Dr. Heidorn continues to argue that the evidence does not support Luckett's contention that his bacterial infection constituted a serious medical need. We do not have to resolve that question, however, because we disagree with Luckett's contention that a finder of fact reasonably could conclude that the doctor acted with deliberate indifference toward that infection. A physician's treatment decisions are entitled to deference unless no minimally competent professional would have done the same. *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011); *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir. 2008). Here, when Dr. Heidorn learned that Luckett had a bacterial infection that caused a burning sensation in his throat and stomach, the doctor prescribed two antibiotics and a drug that is commonly prescribed to treat H. pylori and that also targets excess stomach acid. (This therapy is FDA approved. *See Helicobacter Pylori, supra.*) Although a "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition," *Arnett v. Webster,* 658 F.3d 742, 754 (7th Cir. 2011); *see Smego v. Mitchell,* 723 F.3d 752, 758 (7th Cir. 2013), Luckett reported that he was feeling better during his last consultation with Dr. Heidorn in August 2010, and there is no evidence in the record of a relapse after that date. Moreover, an inmate cannot demand specific care or to see a specialist, *see Arnett,* 658 F.3d at 754; *Jackson v. Kotter,* 541 F.3d 688, 698 (7th Cir. 2008), and Luckett's last word to Dr. Heidorn gave the defendant no reason to question the efficacy of the omeprazole regimen or to order more testing. And contrary to Luckett's contention, Dr. Heidorn could take into account the cost of alternative treatments so long as he did not choose a treatment that he knew would be ineffective. *See Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006); *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999). Dr. Heidorn's chosen method of treatment was not "so far out of bounds that it was blatantly inappropriate," and passes muster under the Eighth Amendment. *See King,* 680 F.3d at 1019.

Luckett also contends that the magistrate judge erred by denying his multiple requests for assistance in recruiting counsel. As we understand his argument, Luckett believes that the magistrate judge was mistaken in thinking him capable of litigating without counsel because, Luckett says, he had not prepared his own submissions. Rather, he says, jailhouse lawyers researched and drafted those submissions for him.

When an indigent litigant requests counsel, the district court must first consider whether he made a reasonable attempt to obtain counsel, and, if so, the court must evaluate the complexity of the case and determine whether the litigant is competent to litigate the case on his own. *Romanelli v. Suliene,* 615 F.3d 847, 851–52 (7th Cir. 2010); *Pruitt v. Mote,* 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). We review for abuse of discretion, asking whether the court applied the correct legal standard and whether the court's decision was reasonable. *Jackson,* 541 F.3d at 700; *Pruitt,* 503 F.3d at 658. We will reverse only upon a showing of prejudice. *Gruenberg v. Gempeler,* 697 F.3d 573, 581 (7th Cir. 2012); *Pruitt,* 503 F.3d at 659.

We are troubled by the denial of Luckett's requests filed after the defendant moved for summary judgment. The earlier requests were appropriately denied because recruiting a lawyer would have been a premature step early in the litigation when it was unknown if Luckett would need complex medical evidence. *See Romanelli,* 615 F.3d at 852. But that was no longer the case once the litigation was well underway, particularly after the doctor had contended at summary judgment that Luckett's bacterial infection was not a serious medical condition and had been adequately treated. That defense undermines the magistrate judge's assertion that Luckett—an inmate with acknowledged mental impairments who was relying on other prisoners to prepare his filings—could competently litigate this "straightforward" claim. *See Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012) (recommending that district judge on remand "give serious consideration to recruiting counsel" for § 1983 plaintiff who may need testimony from medical experts); *Smith v. Knox Cnty. Jail,* 666 F.3d 1037, 1039–40 (7th Cir. 2012) (recommending on remand of § 1983 case dismissed at screening that district court enlist counsel for plaintiff that alleged serious medical condition and would need to develop medical evidence). Moreover, in denying Luckett's last request the magistrate judge reasoned that a lawyer would not reasonably be likely to alter the outcome of the case. The court drew this conclusion by applying an incorrect legal standard that confuses the district court's task with ours. "*Pruitt* nowhere suggests that a district court should consider whether recruiting counsel would affect the outcome of a case; instead, that inquiry is reserved for the appellate court's review of prejudice." *Navejar v. Iyiola,* 718 F.3d 692, 696 (7th Cir. 2013).

Despite these errors, we conclude that counsel could not have made a difference in this litigation, and so Luckett was not prejudiced by the magistrate judge's refusal to recruit counsel. Luckett has never taken issue with Dr. Heidorn's treatment for the diagnosed bacterial infection, and Luckett tells us in his reply brief that the "issue was, and remains" Dr. Heidorn's failure "to make a reasonable medical effort to competently

diagnose [his] throat/esophagus problem." As we have noted, though, the medical evidence in the record ends in August 2010 when Luckett reported to Dr. Heidorn that the prescribed medicine was helping. There is no evidence that Luckett later told Dr. Heidorn or anyone at the prison that he continued to suffer, and Luckett has not told us that such evidence—essential to showing the subjective component of a claim for deliberate indifference—exists. Without that, Luckett's lawsuit is doomed, and "an attorney could not have refashioned his meritless claim into a meritorious one." *See Jackson*, 541 F.3d at 700.

Lastly, Luckett challenges the magistrate judge's refusal to conduct an evidentiary hearing after he complained that prison staff had interfered with his ability to litigate by restricting his access to the jailhouse lawyer and confiscating his legal materials. When Luckett alerted the court to the problem, the magistrate judge ordered defense counsel to investigate what happened to Luckett's legal materials. Counsel submitted affidavits from prison employees explaining how Luckett's materials went missing. The materials eventually were returned, and Luckett (after the court extended his deadline) prepared a brief opposing summary judgment. The court therefore did not abuse its discretion. *See United States v. Berg*, 714 F.3d 490, 501 (7th Cir. 2013).

Accordingly, we AFFIRM the judgment.