**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 4, 2015[*]
Decided February 19, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-2424

| | |
|---|---|
| LEATRICE LUMPKIN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 12 C 5889 |
| COOK COUNTY PUBLIC DEFENDER'S OFFICE, et al., | Joan B. Gottschall, |
| *Defendants-Appellees*. | *Judge*. |

### O R D E R

Leatrice Lumpkin, a stenographer formerly employed by the Cook County Public Defender's Office, appeals the entry of summary judgment against her on her claim of retaliatory discharge as well as the denial of her request for recruited counsel. Because Lumpkin has not created an issue of triable fact and because she was not prejudiced by her lack of counsel, we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The following description of events is taken largely from the defendants' statement of material facts, which Lumpkin failed to counter in the manner required by Northern District of Illinois Local Rule 56.1(b)(3) and which the district court properly deemed undisputed for purposes of summary judgment. *See* N. D. ILL. R. 56.1(b)(3)(c); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th. Cir. 2006).

Lumpkin, who had worked for the Public Defender's Office since 2002, began having job performance issues in 2009. In November she was counseled by her supervisor Mary Maldonado after having a loud altercation with a coworker. Six months later, in a general performance evaluation covering fiscal year 2009, Maldonado rated Lumpkin's communication skills and ability to work with others "unsatisfactory" and noted that Lumpkin had been tardy thirteen times.

In 2010 Lumpkin's job performance worsened and she was issued escalating warnings and disciplinary actions. That year Lumpkin received a verbal warning, a written warning, a one-day suspension, two ten-day suspensions, and a thirty-day suspension. These sanctions stemmed from a number of incidents, including: answering phone calls unprofessionally prompting both callers and coworkers to complain; directing calls to the wrong person; misinforming another staff member of the Division Chief's whereabouts; failing to weigh outgoing postal mail properly; sending interoffice mail through regular mail; leaving work without stamping or sending outgoing mail; failing to deliver mail; and at least four times engaging in loud altercations with coworkers.

In December 2010 Lumpkin filed a charge of discrimination with both the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, alleging that her suspensions resulted from discrimination based on her race, sex, and age. She named her coworker David Mann as someone similarly situated to her but treated differently.

In the first half of 2011, while the administrative charges were pending, Lumpkin continued to be disciplined for poor performance. She was disciplined for among other things repeated tardiness, mishandling of mail and calls, and shouting and cursing at coworkers. In June, at Maldonado's recommendation, the Public Defender's Office fired her. Lumpkin's termination letter cites 19 incidents of poor work performance, insubordination, and inappropriate behavior occurring from February through June 2011.

Lumpkin filed a charge of retaliatory termination of employment with the Illinois Department of Human Rights and the EEOC. Neither took action. Lumpkin then sued the Public Defender's Office, Maldonado, and another supervisor under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-3(a), asserting that she was discharged in retaliation for filing administrative charges of discrimination. (We do not discuss Lumpkin's other claims of race, sex, and age discrimination, which she does not discuss on appeal and thus abandons.)

Lumpkin immediately requested counsel but District Judge Der-Yeghiayan (who later recused himself) denied the request, concluding that the case was not overly complex and that Lumpkin could litigate it competently. But she was unable on four attempts to serve the defendants, so Judge Der-Yeghiayan eventually recruited counsel for the limited purpose of assisting her with service.

After her case was reassigned to Judge Gottschall, Lumpkin renewed her request for counsel. The judge granted her request, noting that Lumpkin needed counsel to conduct discovery effectively. At the close of discovery, however, Lumpkin's counsel withdrew, citing personal incompatibility. Lumpkin requested the assistance of another lawyer, and the court took her request under advisement.

The defendants then moved for summary judgment, contending that Lumpkin did not provide any evidence that their decision to fire her was based on her charges of discrimination. After Lumpkin responded, the district judge observed that Lumpkin's former counsel apparently had failed to request the performance reviews and disciplinary records of Lumpkin's coworker and comparator, David Mann. Stating that she could not rule on the defendants' summary judgment motion without Mann's personnel file, the judge ordered the defendants to produce it under seal.

The district judge ultimately granted summary judgment for the defendants. The judge treated the defendants' undisputed statement of facts as admitted, *see* N. D. ILL. R. 56.1(b)(3)(c), and concluded that Lumpkin's claims failed under both the direct and indirect methods for proving discrimination. The court also concluded that Lumpkin failed to create a triable fact issue about whether she had been fired in retaliation for filing the administrative charges; the court rejected her contention that the seven months between her termination and her filing of the administrative charge was suspicious, particularly since Lumpkin had been cited during this time for 19 workplace violations. Because her claims lacked merit, the judge declined to recruit counsel because doing so would be futile.

On appeal, Lumpkin maintains that her evidence showing that the Public Defender's Office fired her only seven months after she filed her discrimination charges is evidence from which a reasonable jury could conclude that she was fired in retaliation. But "suspicious timing" alone is rarely sufficient to infer causation. *See, e.g., Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015); *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 681 (7th Cir. 2015); *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015), *cert. denied*, 135 S. Ct. 2861 (2015). We agree with the district court that the seven-month period between the filing and her firing is too long, without other evidence, to establish a causal connection between the two. *See, e.g., Carter*, 778 F.3d at 658–60 (seven months between professor's return from FMLA leave and university's decision not to appoint him to department chair too long); *Feldman v. Olin Corp.*, 692 F.3d 748, 757 (7th Cir. 2012) (eight months between plaintiff's latest discrimination filing and suspension too long); *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) (six months too long to infer link between filing of administrative complaint and decision not to hire). Lumpkin has not produced any evidence from which a jury could reasonably infer that the defendants fired her in retaliation for filing her administrative charges.

Lumpkin next challenges the district court's denial of her request to have counsel recruited for her after her former lawyer withdrew. She argues that her former lawyer, who had been recruited, was ineffective because he failed to conduct any discovery.

The district judge erred by denying Lumpkin's request for counsel on grounds of futility. That standard confuses the district court's task with ours: "*Pruitt* nowhere suggests that a district court should consider whether recruiting counsel would affect the outcome of a case; instead, that inquiry is reserved for the appellate court's review for prejudice." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). The proper inquiry for the district court is whether a plaintiff made reasonable efforts to retain counsel and whether, given the difficulty of the case, she was competent to litigate it on her own. *See Romanelli v. Suliene*, 615 F.3d 847, 851–52 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). Our review, as noted, is for prejudice, and Lumpkin has made no showing that a lawyer could have made a difference in this case. *See Pruitt*, 503 F.3d at 659. Lumpkin prepared an adequate response to the defendants' summary judgment motion, and the district judge independently requested additional documents from the defendants so that she could review Mann's personnel file. Lumpkin has not adduced any evidence to suggest that the defendants discriminated against her or fired her in retaliation, and without that no attorney could have "refashioned h[er] meritless claim into a meritorious one." *Jackson v. Kotter*, 541 F.3d 688, 700 (7th Cir. 2008).

We have considered Lumpkin's remaining arguments, and none has merit.

**AFFIRMED**.