NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 10, 2019
Decided January 23, 2020

Before

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-1154

| | |
|---|---|
| MARSHAUN BOYKIN,<br>    *Plaintiff-Appellant*,<br><br>      *v.*<br><br>STEVE SANDHOLM, *et al.*,<br>    *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Western Division.<br><br>No. 3:16-cv-50162<br><br><br>Frederick J. Kapala,<br>*Judge*. |

**ORDER**

Marshaun Boykin filed this lawsuit under 42 U.S.C. § 1983, alleging that the defendants, officer Steve Sandholm and eight unnamed officers, violated his Eighth Amendment rights. The defendants moved to dismiss the lawsuit under the Prison Litigation Reform Act, arguing that Boykin had never filed a grievance complaint with the prison and had therefore failed to exhaust his administrative

remedies. Boykin countered that he had, in fact, filed an emergency grievance complaint—but he said that the prison never responded to it, rendering his administrative remedies "unavailable."

After an evidentiary hearing on exhaustion, the district court dismissed the suit. It concluded that Boykin never filed an emergency grievance complaint and that even if he had, he failed to take advantage of his available remedies because he did not resubmit his complaint through the non-emergency grievance process. On appeal, Boykin challenges this ruling, as well as the denials of his two requests for recruitment of counsel.

While this appeal was pending, the defendants notified us that the grievance log they produced during the exhaustion hearing did not include the inmates' emergency grievance complaints. In light of this error, they have asked us to remand this case to give the district court an opportunity to reconsider its exhaustion determination. Given the defendants' concession, we vacate the district court's exhaustion ruling and remand without reaching the merits of Boykin's two challenges to it. We affirm, however, the denials of Boykin's requests for recruitment of counsel.

I.

Marshaun Boykin, then an inmate at the Dixon Correctional Center in Illinois, filed this lawsuit under 42 U.S.C. § 1983, alleging that the defendants violated his Eighth Amendment rights during an incident that occurred at Dixon on March 26, 2016. According to Boykin, he was sitting in his wheelchair when a fight between two inmates broke out. He alleges that at some point during the fight, several correctional officers and another inmate assaulted him and that the correctional officers then put him in a segregated facility without offering him medical treatment.

Boykin says that he initially tried to resolve this claim through Dixon's administrative process. Under the Illinois Administrative Code, an inmate can commence administrative proceedings by filing a standard grievance complaint within 60 days of the incident. ILL. ADMIN. CODE tit. 20, § 504.810(a). But if the inmate believes that his grievance warrants immediate attention, he can file an emergency grievance complaint. *Id.* § 504.840. Boykin alleges that he filed an emergency grievance complaint on March 26, 2016—the day of the incident. The prison can respond to an emergency complaint by either accepting the complaint as an emergency grievance or denying it and notifying the inmate in writing that he can resubmit his complaint as a standard grievance. *Id.* The prison notifies the

inmate of its decision to deny the emergency grievance by checking the "non-emergency" box on the inmate's emergency grievance complaint and returning the complaint to him. According to Boykin, Dixon returned his emergency grievance complaint to him on May 7, 2016 without checking the box. Considering his administrative remedies exhausted, Boykin submitted this § 1983 claim to the district court that same day.

Boykin also filed a motion for recruitment of counsel, asserting that he was mentally ill, illiterate, and unable to adequately represent himself. The district court denied the motion but noted that it would be open to entertaining a renewed motion if circumstances changed.

The defendants responded that Boykin's lawsuit should be dismissed because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) by failing to file a grievance complaint with the prison. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Under *Ross v. Blake*, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." 136 S. Ct. 1850, 1858 (2016) (alteration in original). Boykin argued that he exhausted all "available" remedies when he filed an emergency grievance complaint because the prison's failure to respond to that complaint rendered the rest of his administrative remedies "unavailable."

To resolve this dispute over exhaustion, the magistrate judge, who was overseeing some of the proceedings, ordered a *Pavey* hearing—an evidentiary hearing on exhaustion. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Prior to the hearing, Boykin filed another motion for recruitment of counsel. The magistrate judge denied this second motion.

Boykin represented himself at the *Pavey* hearing via videoconference. As evidence, he offered his own testimony, as well as the emergency grievance complaint that the prison allegedly returned to him on May 7. The defendants put on two witnesses: James Martens (the grievance officer who oversaw the grievance process at Dixon) and Troy Hendrix (the officer assigned to reviewing emergency grievances at Dixon). They both testified that Dixon had no record of Boykin's alleged March 26 complaint. They also testified that if Boykin had filed an emergency grievance, it would not have been returned to him without an answer. During the hearing, Boykin requested Dixon's grievance log. Dixon

produced Boykin's Cumulative Counseling Summary sheet—which was ultimately irrelevant—and Dixon's Grievance Tracking Log, which had no record of Boykin's March 26 emergency complaint.

The magistrate judge evaluated the evidence and recommended that Boykin's suit be dismissed for failure to exhaust under the PLRA. The district court accepted the magistrate judge's recommendation and dismissed Boykin's suit on two grounds. First, it held that Boykin failed to exhaust his remedies because he never filed an emergency grievance complaint. Alternatively, it held that even if Boykin had filed an emergency grievance complaint, he did not exhaust his remedies because he failed to take advantage of the opportunity to resubmit his emergency grievance complaint as a standard grievance within the 60-day window.

## II.

Boykin, now represented by counsel, takes issue with two aspects of the district court's dismissal. First, he argues that the district court's exhaustion determination erroneously assumes—without any factual basis—that the Grievance Tracking Log produced during the *Pavey* hearing tracks the inmates' emergency grievances, as opposed to standard grievances. Second, Boykin argues that the district court's alternative ground for dismissal was based on a legally erroneous presumption that the standard grievance process was an "available" remedy that he was required to exhaust under the PLRA.

Since this appeal was filed, the defendants have resolved the first issue for us. After filing a brief urging us to affirm the district court's dismissal, the state's attorney submitted a Rule 28(j) letter acknowledging that Dixon maintains two separate grievance logs—one for standard grievance complaints and another for emergency complaints. The Grievance Tracking Log produced during Boykin's *Pavey* hearing was the former. In light of this error, the defendants have asked us to remand the case for another exhaustion determination. Since both parties agree that the district court's dismissal was tainted by the defendants' error, we remand this case for further proceedings on exhaustion. We leave it to the district court to determine whether a new *Pavey* hearing is required to resolve the exhaustion dispute and what the extent and scope of discovery at that hearing should be.

Because we are remanding for a do-over, we will not reach Boykin's second argument. But on remand, the district court is free to consider—as it did before—whether the standard grievance protocol was an "available" remedy that

Boykin was required to exhaust before bringing this suit. *See Ross*, 136 S. Ct. at 1859 (holding that an administrative remedy is "available" under the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of'" (citation omitted)); *see also Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019) (reasoning that because Louisiana's two-step grievance protocol allows the inmate to move on to step two even if he does not receive a timely response from the prison at step one, he is required to attempt both steps under the PLRA). *But see Shifflett v. Korszniak*, 934 F.3d 356, 365–66 (3d Cir. 2019) (holding that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable" even if the prison's nonresponse does not prevent the inmate from taking other administrative steps).

III.

In addition to challenging the district court's exhaustion determination, Boykin also argues that the district court and the magistrate judge erred when they denied his two requests to recruit counsel. We disagree.

"There is no constitutional or statutory right to counsel in federal civil cases." *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). But an indigent litigant may request that the district court appoint counsel under 28 U.S.C. § 1915(e)(1). We review a district court's denial of recruitment of counsel for abuse of discretion. *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007).

When determining whether to grant a plaintiff's request for recruitment of counsel, the court must consider two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Id.* at 654. Boykin's argument falters on the second prong. The main inquiry under the second prong turns on whether "the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* at 655. Both the district court and the magistrate judge reasonably determined that, given Boykin's ability to communicate lucidly with the court, his history of filing adequate complaints in federal court, the simplicity of his claim, and the straightforward nature of the proceedings, the difficulty of the case did not exceed his capacity to litigate it.

For Boykin's first request at the outset of the litigation, the district court determined that Boykin could competently litigate on his own behalf based on

the fact that his filings were "reasonably well written" and that he had previously filed over twenty cases in the district "without 'striking out' under 28 U.S.C. § 1915(g)." *See id.* (holding that while "there are no fixed requirements for determining a plaintiff's competence to litigate his own case; the judge will normally take into consideration the plaintiff's literacy, communication skills, educational level, and litigation experience"). The district court also adequately concluded that Boykin's case was "not very complex" and predicted that a trial would not require the parties to do much more than simply testify about the incident. As a cautionary note, the court also acknowledged that it could not make a conclusive determination so early in the proceedings and that it would be open to reconsidering its decision later. *See Romanelli*, 615 F.3d at 852 (holding that the district court's denial of the plaintiff's request at an early stage in the proceedings was reasonable because when "the case [is] still in its infancy," the district court cannot "make any accurate determination regarding [the inmate's] abilities or the outcome of the lawsuit").

The magistrate judge evaluated similar factors before denying Boykin's second request in the lead-up to the *Pavey* hearing. In particular, the magistrate judge highlighted that even though Boykin described himself as "mentally unstable" and "illiterate," he was a "relatively savvy litigator," who was able to communicate lucidly in the status conference calls. He also noted that the *Pavey* hearing was "straightforward" and expressed confidence in Boykin's ability to discuss the steps he took to exhaust his remedies and present documentary evidence. *Cf. Walker v. Price*, 900 F.3d 933, 941 (7th Cir. 2018) (holding that a jury trial conducted over video conference was complicated enough to warrant the appointment of counsel).

Because both the district court and the magistrate judge reasonably weighed Boykin's ability to represent himself against the simplicity of the proceedings, we conclude that neither denial was an abuse of discretion.

Finally, Boykin urges us to encourage the district court to appoint an attorney on remand in light of the defendants' error and any potential complications that may arise from it. While the district court has the discretion to grant a renewed motion for recruitment of counsel if new developments warrant it, we decline to put a thumb on the scale. The decision to appoint counsel on remand remains wholly within the discretion of the district court.

We AFFIRM in part, VACATE in part, and REMAND to the district court for proceedings consistent with this order.